1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11    WASHINGTON ELECTION INTEGRITY          CASE NO. 3:21-cv-05726-LK
      COALITION UNITED et al.,

12                                           ORDER DENYING MOTION TO
                          Plaintiffs,        REMAND, GRANTING MOTIONS
                                             TO DISMISS, AND DENYING
13              v.                           MOTION TO INTERVENE

      JULIE ANDERSON et al.,
14

15                        Defendants.

16

17          This matter comes before the Court on Washington Election Integrity Coalition United's

18    ("WEICU's") motion to remand and two motions to dismiss filed by Pierce County and Pierce

19    County Auditor Julie Anderson ("Defendants"). Dkt. Nos. 11, 26, 30. One of the latter motions

20    seeks dismissal of the individual Plaintiffs' claims, Dkt. No. 11, and the other seeks dismissal of

21    WEICU's claims, Dkt. No. 30. Because the individual Plaintiffs lack Article III standing and the

22    Court has no supplemental jurisdiction over the remaining state law claims, and because remand

      to state court would be futile, the Court dismisses the case.

23

24

# I.     BACKGROUND

This action is one of several nearly identical actions originally filed in state court by WEICU and numerous pro se plaintiffs in counties across Washington, and one of six such actions that have been removed to this Court.[1] Plaintiffs filed their complaint in Pierce County Superior Court on September 21, 2021. Dkt. No. 1-2. Their claims center on the conduct of the November 2020 general election in Pierce County, Washington.

The individual Plaintiffs[2] bring claims against the Pierce County Auditor for (1) using an uncertified voting system; (2) allowing or facilitating fraudulent alterations of the voting results (which Plaintiffs describe as "vote flipping, additions, and/or deletions"); (3) maintaining records of County elector party preference and identifying County electors' ballots by party preference; (4) giving voters open sleeves to deposit their ballots rather than the "security envelopes" required by state law; and (5) violating the United States Constitution and the Washington State Constitution. Dkt. No. 1-2 at 5–11, 14–16. For each of these alleged "wrongful acts," the individual Plaintiffs seek declaratory and injunctive relief. *Id.* They also seek damages against the Auditor for civil rights violations under 42 U.S.C. §§ 1983 and 1988. *Id.* at 17. WEICU's sole claim is against the Auditor and Pierce County under Washington's Public Records Act ("PRA"), Wash. Rev. Code §§ 42.56.001–42.56.900, for wrongfully denying WEICU's records request for "original ballots, ballot images, spoiled ballots, adjudication records, ballot envelopes, and returned ballots for the Election." Dkt. No. 1-2 at 12. WEICU seeks to "compel Defendants to

---

[1] The five other removed actions are *Washington Election Integrity Coalition United v. Fell*, No. C21-1354-LK; *Washington Election Integrity Coalition United v. Kimsey*, No. C21-5746-LK; *Washington Election Integrity Coalition United v. Wise*, No. C21-1394-LK; *Washington Election Integrity Coalition United v. Bradrick*, No. C21-1386-LK; and *Washington Election Integrity Coalition United v. Hall*, No. C21-5787-LK.

[2] The individual Plaintiffs are Kelly Worden, Miriam Worden, Rachel Lynn Kemak, Kirsten Moran, Jeffrey White, Tim McFarlane, Elizabeth McFarlane, June Timmerman, Mike Timmerman, Yancey Creekmore, Gregory Baltmiskis, David Tripp, Steve McCoy, and Timothy Tooker. Dkt. No. 1-2 at 20–21, 25. Plaintiff Kevin Lee Schmadeka voluntarily dismissed his claims on October 25, 2021. *See* Dkt. Nos. 28, 50.

ORDER DENYING MOTION TO REMAND, GRANTING MOTIONS TO DISMISS, AND DENYING MOTION TO INTERVENE - 2

1   provide access to public records from the Election for a full forensic audit." *Id.*

2       Defendants removed the case to this Court on October 1, 2021. Dkt. No. 1. On October 13,

3   2021, Defendants moved to dismiss individual Plaintiffs' claims under Federal Rules of Civil

4   Procedure 12(b)(2), (4), (5), and (6), noting that they did not move to dismiss WEICU's sole claim

5   because it was still unrepresented by counsel and thus had not yet made a proper appearance. Dkt.

6   No. 11 at 1–2. After an attorney entered a notice of appearance on behalf of WEICU, Dkt. No. 25,

7   Defendants moved to dismiss WEICU's PRA claim under Federal Rule of Civil Procedure

8   12(b)(6), Dkt. No. 30. On October 22, 2021, WEICU filed a motion to remand.[3] Dkt. No. 26. Then-

9   Plaintiff Kevin Schmadeka also filed a motion to remand, styled as a "Motion to Strike Notice of

10   Removal to Federal District Court." Dkt. No. 15. None of the other individual Plaintiffs joined in

11   this motion. Eleven days later, Schmadeka moved to withdraw as a plaintiff, citing "irreconcilable

12   differences" with WEICU. Dkt. No. 28 at 1.

13                **II.   DISCUSSION**

14       Oddly, Defendants removed this action on the basis that "this Court has original

15   jurisdiction [over it] under 28 U.S.C. § 1331," Dkt. No. 1 at 2, and then sought to dismiss the

16   action on the basis that the individual Plaintiffs lack Article III standing to bring their claims, Dkt.

17   No. 11 at 5–8. As Defendants acknowledged, the only other Plaintiff at that time was WEICU, a

18   then-pro se entity not properly before the Court that purported to assert only a state law claim. Dkt.

19   No. 11 at 1–2.

20       28 U.S.C. § 1441 allows a defendant to remove an action filed in state court to federal

21   district court where the federal district court has original jurisdiction. The Ninth Circuit "strictly

22   construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be

23

24   ---

[3] WEICU had previously filed a "Motion to Strike Notice of Removal" seeking remand. Dkt. No. 17. However, because WEICU filed the motion without being represented by counsel, the Court struck the motion. Dkt. No. 23.

ORDER DENYING MOTION TO REMAND, GRANTING MOTIONS TO DISMISS, AND DENYING MOTION TO INTERVENE - 3

rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id*. Ultimately, if a district court lacks subject matter jurisdiction over a removed action, it usually has the duty to remand it, for "removal is permissible only where original jurisdiction exists at the time of removal or at the time of the entry of final judgment[.]" *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 43 (1998); *see* 28 U.S.C. § 1441(a).

Because the Court lacks subject matter jurisdiction over Plaintiffs' federal claims, it cannot exercise supplemental jurisdiction over any of Plaintiffs' state law claims and must either remand or dismiss the entire case. The Court dismisses the Plaintiffs' claims because remand to state court would be futile.

**A.      Because the Individual Plaintiffs Do Not Have Article III Standing, this Court Lacks Subject Matter Jurisdiction over Their Claims**

At the outset, the Court recognizes that the right at issue in this case—the right to vote and have that vote counted—is "a fundamental matter in a free and democratic society." *Reynolds v. Sims*, 377 U.S. 533, 561–62 (1964). But a voter seeking relief in federal court for alleged violations of constitutional rights must have standing to do so, including "a personal stake in the outcome, distinct from a generally available grievance about government." *Gill v. Whitford*, 138 S. Ct. 1916, 1923 (2018) (cleaned up). "[A] suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). Article III's "case or controversy" requirement thus obligates federal courts to determine, as an initial matter, whether plaintiffs have standing to bring suit. *Lance v. Coffman*, 549 U.S. 437, 439 (2007).

As the party invoking federal jurisdiction, Defendants bear the burden of establishing the

existence of a case or controversy under Article III. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *see also Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1099 (9th Cir. 2022). "To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560 n.1). The injury must also be "concrete"; "that is, it must actually exist." *Id.* at 339–40. Because Defendants themselves argue that the individual Plaintiffs lack Article III standing, Dkt. No. 11 at 7–8, 17–19, they have failed to meet their burden to establish that the Court has subject matter jurisdiction over these claims, *see Britton v. Cnty. of Santa Cruz*, No. 19-CV-04263-LHK, 2020 WL 4197609, at *4 (N.D. Cal. July 22, 2020).

Defendants urge the Court to dismiss Plaintiffs' claims because they raise only generalized grievances and do not identify any particularized individual injury. Dkt. No. 11 at 7–8, 17–19. These challenges are evaluated under Federal Rule of Civil Procedure 12(b)(1). *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). Defendants advance both factual and facial challenges to the individual Plaintiffs' standing. In reviewing a factual challenge, the court may consider materials beyond the complaint, *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003), "weigh the evidence[,] and satisfy itself as to the existence of its power to hear the case," *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977). In reviewing a facial attack, however, the inquiry is confined to the allegations in the complaint, and the court assumes all materials allegations in the complaint are true. *Savage*, 343 F.3d at 1039 n.2. However, "[t]his is not to say that plaintiff may rely on a bare legal conclusion to assert injury-in-fact, or engage in an 'ingenious academic exercise in the conceivable' to explain how defendants' actions

caused his injury." *Maya*, 658 F.3d at 1068 (internal footnotes omitted) (quoting *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689–90 (1973)).

      The Supreme Court has "consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lance*, 549 U.S. at 439 (quoting *Lujan*, 504 U.S. at 573–74 (1992)); *see also Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[T]he Court has held that when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction."). Accordingly, and in recognition "that a person's right to vote is 'individual and personal in nature,'" courts have long held that "'voters who allege facts showing *disadvantage to themselves as individuals* have standing to sue' to remedy that disadvantage." *Gill*, 138 S. Ct. at 1929 (emphasis added) (quoting *Reynolds*, 377 U.S. at 561 and *Baker v. Carr,* 369 U.S. 186, 206 (1962)). As Defendants contend, Plaintiffs fail to show such disadvantage and therefore lack Article III standing.

      1.    <u>Plaintiffs Do Not Allege that They Suffered Any "Concrete, Particularized, and Actual or Imminent" Injury from the Alleged Misconduct by the Auditor</u>

      Plaintiffs' claims each follow a similar pattern: they allege a violation of law, ask the Court to declare the Auditor's duties under the law and enjoin her from violating the law, and then state that they "will suffer irreparable injury" from violations of their constitutional rights:

| Allegation | Requested Declaration/Injunction | "Injury" |
| --- | --- | --- |
| Plaintiffs "are informed and believe" that the Auditor used an uncertified voting system. Dkt. No. 1-2 at 5. | Declare the "Plaintiffs' rights and the duties of Auditor as they pertain to the Uncertified Voting System" in the 2020 election and future elections, and restrain the Auditor from "conducting elections on the Uncertified Voting System." *Id.* at 6. | "Plaintiffs will suffer irreparable injury in that their fundamental rights under the Washington State Constitution and/or United States Constitution . . . will be further violated." *Id.* at 6–7. |

| Allegation | Requested Declaration/Injunction | "Injury" |
|---|---|---|
| Plaintiffs "are informed and believe" that the Auditor "allow[ed] and/or facilitate[ed] electronic manipulation of the voting results from the [2020] Election," and that "a portion of the state-wide vote flipping, additions and/or deletions occurred in the County's Election overseen by Auditor." *Id.* at 7–8. | Declare the "Plaintiffs' rights and the duties of Auditor with regard to the alleged vote flipping, additions and/or deletions before, during and/or after the [2020] Election," and restrain the Auditor from "allowing and/or facilitating electronic manipulation of the voting results for any election held in the County." *Id.* at 8. | Same as above. *See id.* at 8. |
| Plaintiffs "are informed and believe" that the Auditor allowed or facilitated (1) maintenance of a record of County voters' party preference and (2) identification of ballots cast by County voters by party preference. *Id.* at 9. | Declare the "Plaintiffs' rights and the duties of Auditor with regard to the alleged party preference conduct," and restrain the Auditor from "allowing and/or facilitating party preference tracking and/or ballot identification." *Id.* at 10. | Same as above. *See id.* at 10. |
| Auditor's conduct violated Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution and the "privileges and immunities" clause of the Washington Constitution. *Id.* at 15. | Declare the "Plaintiffs' rights and the duties of Auditor, as they pertain to the [2020] Election and future elections in the County," and restrain the Auditor from using an uncertified voting system, allowing or facilitating the manipulation of voting results, and allowing or facilitating party preference tracking or ballot identification. *Id.* at 16. | Same as above, *see id.* at 16, and "qualified electors were denied their fundamental right of suffrage without due process of law" and "[q]ualified electors who voted similarly had the value of their votes diluted, and the will of said voters denied, without due process of law." *Id.* at 15. |
| Plaintiffs "are informed and believe" that the Auditor is relying on a Washington regulation allowing "a security envelope or sleeve" to provide "open sleeves" for voters or "for online printable ballots, no envelope or 'open sleeve' at all." *Id.* at 11. | Declare the "Plaintiffs' rights and the duties of Auditor in the form of an order striking the sleeve option" from the regulation and requiring the Auditor to use a security envelope instead. *Id.* | Use of sleeves "violate[s] Plaintiffs' right to absolute secrecy in preparing and depositing their ballots." *Id.* |

      In none of these allegations do Plaintiffs claim that they suffered any "concrete, particularized, and actual or imminent" injury from the Auditor's alleged misconduct. Although Plaintiffs do not explain their theory of vote dilution, it appears to be based on general allegations of election irregularities that affected the votes of all "qualified electors" in the County. *See* Dkt. No. 1-2 at 15 (because "Auditor failed to follow state and federal law," "[q]ualified electors who voted similarly had the value of their votes diluted"). "As courts have routinely explained, vote dilution is a very specific claim that involves votes being weighed differently and cannot be used

generally to allege voter fraud." *Bowyer v. Ducey*, 506 F. Supp. 3d 699, 711 (D. Ariz. 2020). *See also Feehan v. Wis. Elections Comm'n*, 506 F. Supp. 3d 596, 609 (E.D. Wis. Dec. 9, 2020) (plaintiff lacked standing where his "alleged injuries are injuries that any Wisconsin voter suffers if the Wisconsin election process were . . . so riddled with fraud, illegality, and statistical impossibility" that its results could not be certified); *Martel v. Condos*, 487 F. Supp. 3d 247, 253 (D. Vt. 2020) ("A vote cast by fraud or mailed in by the wrong person through mistake has a mathematical impact on the final tally and thus on the proportional effect of every vote, but no single voter is specifically disadvantaged."); *Paher v. Cegavske*, 457 F. Supp. 3d 919, 926 (D. Nev. 2020) ("Plaintiffs' purported injury of having their votes diluted due to ostensible election fraud may be conceivably raised by any Nevada voter."); *Am. C.R. Union v. Martinez-Rivera*, No. 2:14-CV-026-AM-CW, 2015 WL 13650011, at *7 (W.D. Tex. Feb. 23, 2015) (speculative complaints of "potential vote dilution are nothing but a generalized grievance about government, complaining that an official should be required to follow the law."). While Plaintiffs speculate that the Auditor tracked or identified ballots by "party preference," Dkt. No. 1-2 at 9, they do not suggest that any votes were weighed differently, including their own. Thus, although allegations of vote dilution may create standing in some circumstances, they do not do so here.

Similarly, Plaintiffs never assert that they were personally harmed by any of Defendants' alleged conduct with respect to the use of an uncertified voting system, the manipulation of voting results, the tracking of party preference, or the use of ballot sleeves. *See generally* Dkt. No. 1-2. Even to the extent that their allegations regarding the use of ballot sleeves, construed charitably, can be interpreted as asserting an injury personal to Plaintiffs, any such injury is too uncertain and speculative to confer Article III standing. Plaintiffs assert that "[t]he open sleeves used by Auditor allow for unfettered access to ballots prior to tabulation, are an invitation to ballot tampering, and violate Plaintiffs' right to absolute secrecy in preparing and depositing their ballots." Dkt. No. 1-

2 at 11. But the claim that the use of sleeves "allow[s] for," or is "an invitation to," a potential violation of ballot secrecy is merely speculation about possible injury that is insufficient to establish an injury-in-fact for purposes of Article III standing. *See Clapper*, 568 U.S. at 409 (a threatened injury must be "certainly impending" to constitute injury in fact).

To the extent Plaintiffs argue more broadly that they maintain an interest in government officials conducting an election in conformity with the Constitution, "they merely assert a 'generalized grievance' stemming from an attempt to have the Government act in accordance with their view of the law." *Wis. Voters All. v. Pence*, 514 F. Supp. 3d 117, 120 (D.D.C. 2021). *See also Lujan*, 504 U.S. at 576 ("the public interest in proper administration of the laws" is insufficient to create Article III standing, regardless of "the source of the asserted right"); *Wood v. Raffensperger*, 981 F.3d 1307, 1314 (11th Cir. 2020) ("An injury to the right 'to require that the government be administered according to the law' is a generalized grievance." (quoting *Chiles v. Thornburgh*, 865 F.2d 1197, 1205–06 (11th Cir. 1989))), *cert. denied*, 141 S. Ct. 1379 (2021); *Ickes v. Whitmer*, No. 1:22-CV-817, 2022 WL 4103030, at *3 (W.D. Mich. Sept. 8, 2022) (finding that "Plaintiffs likely do not have standing to raise [their] concern about [allegedly uncertified] machines used in the November 2022 election or the possible destruction of records" because they "have only a generalized grievance that would be common among all people who cast a vote in the November 2022 election and not a particularized, individual injury").

Plaintiffs also lack standing to assert their claims under 42 U.S.C. §§ 1983 and 1988 because those claims are derivative of their other claims, which the Court has already found they lack standing to assert. Sections 1983 and 1988 do not create standing where it is otherwise lacking. *See Save Our Valley v. Sound Transit*, 335 F.3d 932, 936 (9th Cir. 2003) ("One cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against

1   anything." (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002))); 42 U.S.C. § 1988 (granting

2   discretion to accord attorney's fees to the "prevailing party" in a suit under § 1983).[4]

3          Defendants' motion to dismiss the individual Plaintiffs' claims was opposed by Plaintiff

4   Tim Tooker, Dkt. No. 40, but Tooker's opposition fails to demonstrate that he or any of the other

5   individual Plaintiffs have standing. Although the opposition brief acknowledges that there are

6   "more stringent pleading requirements for federal actions" and argues that Defendants improperly

7   removed the case to federal court, *id.* at 3, it does not otherwise address the standing issue at all.

8   *See generally id.*

9          Because Plaintiffs have asserted only generalized grievances, the Court finds that Plaintiffs

10  lack Article III standing to assert their federal claims.

11         2.    The Court Lacks Supplemental Jurisdiction over Plaintiffs' State Law Claims

12         WEICU and Defendants dispute whether the Court may exercise supplemental jurisdiction

13  over Plaintiffs' state law claims. Dkt. No. 43 at 5–7; Dkt. No. 44 at 4–5.

14         Under 28 U.S.C. § 1367(a), a district court "shall have" supplemental jurisdiction over

15  claims that form part of the "same case or controversy" as claims within the court's original

16  jurisdiction. However, "if the court dismisses [all federal claims] for lack of subject matter

17  jurisdiction, it has no discretion" under Section 1367 to adjudicate the plaintiff's state-law claims

18  "and must dismiss all claims." *Herman Fam. Revocable Tr. v. Teddy Bear*, 254 F.3d 802, 806 (9th

19  Cir. 2001); *see also Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 664 (9th Cir. 2002)

20

21  [4] The Court does not consider Defendants' argument that Plaintiffs failed to serve Auditor Julie Anderson in her

22  personal capacity because the Court has already found that it lacks subject matter jurisdiction to hear the claims naming
    her as a defendant. *See* Dkt. No. 11 at 20–21; *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431
    (2007) ("[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the

23  merits." (cleaned up)). For the same reason, the Court does not reach Defendants' argument that all individual
    Plaintiffs other than Timothy Tooker have conceded that the motion to dismiss has merit because they failed to file

24  any opposition. *See* Dkt. No. 41 at 1–2. Finally, because the Court finds in favor of Defendants on their facial
    challenges to Plaintiffs' standing, it does not address their factual challenges.

ORDER DENYING MOTION TO REMAND, GRANTING MOTIONS TO DISMISS, AND DENYING MOTION
TO INTERVENE - 10

1  ("[W]ith the dismissal of [plaintiff's] federal constitutional claim for lack of standing, we have no

2  authority to retain jurisdiction over [his] state law claims.").

3          Because the Court does not have subject matter jurisdiction over Plaintiffs' federal claims

4  due to their lack of Article III standing, it has no discretion under 28 U.S.C. § 1367(c) to adjudicate

5  the remaining claims. Without subject matter jurisdiction, the Court is left to either dismiss or

6  remand Plaintiffs' claims. *See Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196–98 (9th Cir.

7  2016).

8  **B.    Plaintiffs' Claims Are Dismissed Because Remand Would Be Futile**

9          "If at any time before final judgment it appears that the district court lacks subject matter

10  jurisdiction" over a case that has been removed from state court, "the case shall be remanded." 28

11  U.S.C. § 1447(c); *see also Polo*, 833 F.3d at 1196 (a district court lacking subject matter

12  jurisdiction "generally *must* remand the case to state court, rather than dismiss it" (emphasis in

13  original)). Usually, "[r]emand is the correct remedy because a failure of federal subject-matter

14  jurisdiction means only that the *federal* courts have no power to adjudicate the matter. State courts

15  are not bound by the constraints of Article III." *Polo*, 833 F.3d at 1196 (emphasis in original).

16  However, the Ninth Circuit has held that a district court may dismiss a case rather than remand it

17  to state court where it is "certain that a remand to state court would be futile." *Bell v. City of*

18  *Kellogg*, 922 F.2d 1418, 1425 (9th Cir. 1991). Because remand of Plaintiffs' claims to state court

19  is certain to be futile, the Court dismisses the claims instead of remanding them.

20          1.    The Futility Exception

21          There is some doubt about the continued vitality of the futility exception. A few months

22  after the Ninth Circuit decided *Bell*, the Supreme Court issued an opinion in which it noted that

23  "the literal words of § 1447(c)" give "no discretion to dismiss rather than remand an action" over

24  which a district court lacks original jurisdiction. *Int'l Primate Prot. League v. Administrators of*

1    *Tulane Educ. Fund*, 500 U.S. 72, 89 (1991) (quoting *Maine Ass'n of Interdependent*

2    *Neighborhoods v. Comm'r, Maine Dep't of Hum. Servs.*, 876 F.2d 1051, 1054 (1st Cir. 1989)).

3    Although the Supreme Court "did not reject the futility doctrine outright," the Ninth Circuit has

4    expressed concern that "[i]n the wake of *International Primate*, a number of other circuits have

5    expressly rejected the futility doctrine," and it "may no longer be good law." *Polo v. Innoventions*

6    *Int'l, LLC*, 833 F.3d 1193, 1197–98 (9th Cir. 2016) (citing *Hill v. Vanderbilt Capital Advisors,*

7    *LLC*, 702 F.3d 1220, 1225–26 (10th Cir. 2012) (collecting cases)). Despite this lingering doubt,

8    the Ninth Circuit in *Polo* declined to overrule *Bell*: "Polo has not argued that *Bell* is no longer

9    controlling law, and we decline to so hold *sua sponte*." *Id.* at 1198. The Ninth Circuit reiterated

10   that, under the *Bell* rule, a district court may dismiss a case "only when the eventual outcome of

11   [the] case after remand is so clear as to be foreordained[.]" *Id.*

12           Since the 2016 decision in *Polo*, some district courts in the Ninth Circuit have concluded

13   that the futility exception is now merely "[h]istorical[]." *Morgan v. Bank of Am., N.A.*, No. 2:20-

14   CV-00157-SAB, 2020 WL 3979660, at *2 (E.D. Wash. July 14, 2020); *see also Washington v.*

15   *City of Sunnyside*, No. 1:20-CV-3018-RMP, 2021 WL 4197368, at *2 (E.D. Wash. Aug. 26, 2021);

16   *Mendoza v. Aldi Inc.*, No. 219CV06870ODWJEMX, 2019 WL 7284940, at *2 (C.D. Cal. Dec. 27,

17   2019); *Alvarado v. Univ. of S. California*, No. CV 17-3671-GW(AJWX), 2017 WL 8116092, at

18   *5 (C.D. Cal. Sept. 21, 2017). However, other district courts have continued to apply the exception.

19   *See, e.g.*, *Strojnik v. Super 8 Worldwide Inc.*, No. C21-0927-PHX-DWL, 2022 WL 613227, at *3

20   (D. Ariz. Mar. 2, 2022); *Ross v. Hawaii Nurses' Ass'n Off. & Pro. Emps. Int'l Union Loc. 50*, 290

21   F. Supp. 3d 1136, 1148 (D. Haw. 2018); *Advocs. for Individuals With Disabilities LLC v. MidFirst*

22   *Bank*, 279 F. Supp. 3d 891, 895 & n.1 (D. Ariz. 2017).

23           There is good reason to embrace the concerns expressed in *Polo* about the validity of the

24   futility doctrine: as the Supreme Court and other courts have noted, it appears to contradict the

mandatory language of 28 U.S.C. § 1447(c). *Int'l Primate*, 500 U.S. at 89; *Esteves v. SunTrust Banks, Inc.*, 615 F. App'x 632, 636–37 (11th Cir. 2015) ("The Supreme Court has noted that the literal words of § 1447(c) give district courts no discretion to dismiss rather than remand an action when subject-matter jurisdiction is lacking . . . Whether the matter is justiciable under state law is a matter for the state court to decide.") (cleaned up); *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1033 (8th Cir. 2014) ("If . . . the case did not originate in federal court but was removed there by the defendants, the federal court *must* remand the case to the state court from whence it came." (emphasis in original)); *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 557–58 (10th Cir. 2000) ("The plain language of § 1447(c) gives no discretion to dismiss rather than remand an action removed from state court over which the court lacks subject-matter jurisdiction."); *Bromwell v. Michigan Mut. Ins. Co.*, 115 F.3d 208, 214 (3d Cir. 1997) ("In light of the express language of § 1447(c) and the Supreme Court's reasoning in *International Primate,* we hold that when a federal court has no jurisdiction of a case removed from a state court, it must remand and not dismiss on the ground of futility.").[5]

However, the Ninth Circuit has upheld application of the futility exception in several cases since *Bell. See, e.g.*, *Strojnik v. Driftwood Hosp. Mgmt., LLC*, No. 21-16060, 2022 WL 1642234,

---

[5] It also seems counter to the long-established principle that "[w]ithout jurisdiction the court cannot proceed at all in any cause" for a court without jurisdiction to effectively decide the merits of a case. *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514 (1868). This is especially true where defendants have engaged in the "dubious strategy" of removing the case on the basis that the federal court "has original jurisdiction under 28 U.S.C. § 1331," Dkt. No. 1 at 2, only to then move to dismiss on the basis that the plaintiffs' claims "do[] not state an Article III case or controversy," Dkt. No. 11 at 8 (cleaned up). *See Collier v. SP Plus Corp.*, 889 F.3d 894, 895–97 (7th Cir. 2018) (noting that defendants' "dubious strategy" of removing on the basis that "the district court had federal-question jurisdiction" and then "mov[ing] to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of Article III standing" "resulted in a significant waste of federal judicial resources, much of which was avoidable."); *Perna v. Health One Credit Union*, 983 F.3d 258, 273 (6th Cir. 2020) ("there is something 'anomalous' about the [defendant] removing this suit to federal court on the ground that the court had jurisdiction and then arguing to the very same court that it lacks jurisdiction"); *Zanotti v. Invention Submission Corp.*, No. 18-CV-5893 (NSR), 2020 WL 2857304, at *11 (S.D.N.Y. June 2, 2020) ("[I]f InventHelp Defendants were truly concerned about expense and the preservation of judicial resources, their litigation strategy would not have involved invoking this Court's jurisdiction only to immediately challenge it on standing grounds.").

at *1 (9th Cir. May 24, 2022) ("The district court properly denied [plaintiff's] motion to remand the actions to state court because remand would have been futile."); *Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905, 920 n.6 (9th Cir. 2022) ("A narrow 'futility' exception to this general rule permits the district court to dismiss an action rather than remand it if there is 'absolute certainty' that the state court would dismiss the action following remand."); *Marshall v. Motel 6 Operating LP*, 825 F. App'x 527, 528 (9th Cir. 2020) ("[W]e have recognized a futility exception to the remand mandate in § 1447(c)[.]"); *Rodriguez v. U.S. Healthworks, Inc.*, 813 F. App'x 315, 316 (9th Cir. 2020) (noting that the futility doctrine applies "when a district court has 'absolute certainty' that a state court would 'simply dismiss the action on remand'" (quoting *Polo*, 833 F.3d at 1198)). Because the Ninth Circuit explicitly declined to overrule *Bell* in *Polo* and has continued to apply the doctrine after *Polo*, the Court concludes that *Bell* remains binding precedent and therefore addresses whether it is certain that remand would be futile.

## 2.   Dismissal of Plaintiffs' Claims on Remand Is Effectively "Foreordained"

In this case, dismissal of Plaintiffs' claims upon remand is effectively "foreordained." *Polo*, 833 F.3d at 1198. This action is one of eight nearly identical actions originally filed in state court in counties across Washington, six of which were removed to this Court. *See supra* at 2 n.2 (listing removed cases); *see also* Dkt. No. 53 at 29–46, 68–87. Both of the cases that remained in state courts have already been dismissed, although appeals are currently pending. *See Wash. Election Integrity Coal. United v. Beaton*, No. 21-2-50572-11 (Wash. Sup. Ct. Dec. 13, 2021), *appeal filed sub nom. Wash. Election Integrity Coal. United v. Franklin Cnty.*, No. 391574 (Wash. Ct. App. Div. III Sept. 6, 2022); *Wash. Election Integrity Coal. United v. Schumacher*, No. 21-2-00042-22 (Wash. Sup. Ct. Mar. 28, 2022), *appeal filed sub nom. Schulz v. Schumacher*, No. 388841 (Wash. Ct. App. Div. III May 4, 2022). In *Schumacher*, the court concluded that "Plaintiffs' election claims are untimely and barred by statute and the equitable doctrine of laches, that the respective

1    Plaintiffs each lack standing to bring the election claims alleged, . . . that Plaintiffs fail to state an

2    election claim upon which relief may be granted," and "that Plaintiffs fail to state a claim upon

3    which relief may be granted under the Public Records Act." No. 21-2-00042-22, slip. op. at 2 (Mar.

4    28, 2022). The court further found that "Plaintiffs' claims are frivolous and advanced without

5    reasonable cause, are not well grounded in fact or warranted by existing law or a good faith

6    argument for the extension, modification, or reversal of existing law or the establishment of new

7    law, and were interposed for improper purposes." *Id.* Similarly, in *Beaton*, the court found that,

8    "for the reasons stated in Defendants' Motion, Plaintiffs lack standing and have failed to state a

9    claim upon which relief can be granted." No. 21-2-50572-11, slip. op. at 1 (Dec. 13, 2021).

10        The claims in the complaints that were dismissed in *Schumacher* and *Beaton* are nearly

11    identical to the claims in this case: *Beaton* contained a nearly identical claim for use of an

12    uncertified voting system, and *Beaton* and *Schumacher* both included nearly identical claims of

13    allowing or facilitating vote flipping, additions and/or deletions, party preference tracking, and

14    federal and state constitutional violations premised on those claims, as well as PRA claims. *See*

15    *generally* Second Amended Verified Complaint, *Schumacher*, No. 21-2-00042-22 (Wash. Sup. Ct.

16    Jan. 18, 2022) ("*Schumacher* Complaint"); First Amended Verified Complaint, *Beaton*, No. 21-2-

17    50572-11 (Wash. Sup. Ct. Oct. 11, 2021) ("*Beaton* Complaint"). Substantial portions of all three

18    complaints appear to be copied verbatim from one another. *See generally Schumacher* Complaint;

19    *Beaton* Complaint; Dkt. No. 1-2.

20        Although there are some differences between the allegations in each of these cases, those

21    differences are minor and could not plausibly justify a different outcome. For example, some of

22    the allegations in *Beaton* and *Schumacher* are absent from the complaint in this case: in *Beaton*,

23    plaintiffs included in their allegations of vote manipulation that "for several weeks during the

24    Election, Auditor experienced problems with the signature verification system used to verify ballot

1    envelope signatures, including without limitation, lost access to the state-supplied signature

2    database." *Beaton* Complaint at 7; *see also Schumacher* Complaint at 5 (nearly identical

3    allegation). In *Schumacher*, plaintiffs also alleged that "the Auditor's office experienced a

4    ransomware attack that, among other things, blocked access to County computers and election

5    systems which continued to be shut down through certification of the Election." *Schumacher*

6    Complaint at 4–5. These allegations are made in *addition* to all the same allegations made in the

7    complaint in this case, and for purposes of remand futility amount to an inconsequential difference.

8           The complaint in this case does contain a claim that is not present in either *Beaton* or

9    *Schumacher*: Plaintiffs argue that the "Auditor failed to provide electors with security envelopes

10   to conceal ballots for the Election," and that the "open sleeves used by Auditor . . . violate

11   Plaintiffs' right to absolute secrecy in preparing and depositing their ballots." Dkt. No. 1-2 at 11.

12   But dismissal of this claim on remand is just as assured as that of the claims that have already been

13   specifically considered and rejected in *Schumacher* and *Beaton*. This is because all of Plaintiffs'

14   state law claims other than the PRA claim share a common defect: they depend upon Section

15   29A.68.013 of the Revised Code of Washington ("Section 13") as a vehicle for Plaintiffs'

16   requested relief. Dkt. No. 1-2 at 5, 7, 9–10, 12. As relevant here, Section 13 states that a judge

17   "shall, by order, require any person charged with error, wrongful act, or neglect to forthwith correct

18   the error, desist from the wrongful act, or perform the duty and to do as the court orders" where an

19   affidavit of an elector demonstrates that "[a]n error or omission has occurred or is about to occur

20   in the official certification of any . . . election," or that certain wrongful acts have been performed

21   by, or a neglect of duty has occurred on the part of, an election officer. Wash. Rev. Code §

22   29A.68.013. Importantly, Section 13 sets a strict time limit: the elector's affidavit "shall be filed

23   with the appropriate court no later than ten days following the official certification of the . . .

24

ORDER DENYING MOTION TO REMAND, GRANTING MOTIONS TO DISMISS, AND DENYING MOTION
TO INTERVENE - 16

election." *Id.* The complaint was filed on September 21, 2021, well past ten days after the certification of the 2020 general election. Dkt. No. 1-2 at 2.

Plaintiffs do not allege that they complied with the time limit for filing actions under Section 13. Rather, they argue that the 10-day limitations period does not apply to their claims because they "are not seeking de-certification of the Election." Dkt. No. 1-2 at 4. But the plain language of Section 13 makes no exceptions, nor is relief under the section limited to de-certification of the election. *See* Wash. Rev. Code § 29A.68.013. Plaintiffs expressly seek injunctive relief under Section 13, and they are therefore required to satisfy Section 13's requirements before they may obtain any such relief. *See In re Feb. 14, 2017, Special Election on Moses Lake Sch. Dist. #161 Proposition 1*, 413 P.3d 577, 580 (Wash. Ct. App. 2018) (the statute "demands that an election contest be filed within ten days of the election's certification"); *see also, e.g.*, *Reid v. Dalton*, 100 P.3d 349, 354 (Wash. Ct. App. 2004) ("Filing an action for declaratory judgment, rather than one for direct relief, d[oes] not avoid the statute of limitation" for an election challenge; "[w]here . . . a special statute of limitation applies, even a declaratory judgment action is subject to the same statutory limitation."). There is no colorable argument that Plaintiffs have brought or can bring valid claims under Section 13.[6]

>        3.      The Dismissal of WEICU's PRA Claim Is Also "Foreordained"

WEICU's PRA claim is also doomed under Washington law because Washington courts have already decisively rejected its legal theory. WEICU seeks to "compel Defendants to provide access to public records from the Election for a full forensic audit," and asserts that a records request it made under the PRA in August 2021 for "original ballots, ballot images, spoiled ballots,

---

[6] Plaintiffs' claims under the Washington State Constitution must also fail because the Washington Supreme Court has "clearly established that the right to contest an election 'rests solely upon, and is limited by, the provisions of the statute relative thereto,'" *Becker v. Cnty. of Pierce*, 890 P.2d 1055, 1058 (Wash. 1995) (quoting *Quigley v. Phelps*, 132 P. 738, 738 (Wash. 1913))—here, Section 13.

ORDER DENYING MOTION TO REMAND, GRANTING MOTIONS TO DISMISS, AND DENYING MOTION TO INTERVENE - 17

adjudication records, ballot envelopes, and returned ballots" was wrongly denied on the grounds that the documents being requested were exempt by statute. Dkt. No. 1-2 at 12.

Under the PRA, "[a]n agency may lawfully withhold production of records if a specific exemption applies." *White v. Clark Cnty.* (*White I*), 401 P.3d 375, 378 (Wash. Ct. App. 2017). "There are three sources of PRA exemptions: (1) enumerated exemptions contained in the PRA itself, (2) any other statute that exempts or prohibits disclosure, and (3) the Washington Constitution." *Id.* (cleaned up). The "other statute" exemption is found in Section 42.56.070(1) of the Revised Code of Washington: "Each agency, in accordance with published rules, shall make available for public inspection and copying all public records, unless the record falls within the specific exemptions of . . . this chapter, or other statute which exempts or prohibits disclosure of specific information or records." Washington courts have squarely held that both Section 29A.60.110 of the Revised Code of Washington and Section 434-261-045 of the Washington Administrative Code create a statutory exemption for ballots and ballot images under the "other statute" exemption. *White I*, 401 P.3d at 378–80.

Section 434-261-045 of the Washington Administrative Code "unambiguously requires that ballots be kept in secure storage at all times other than during processing, duplication, inspection, and tabulation and states that they can *only* be accessed in accordance with RCW 29A.60.110 and 29A.60.125." *White I*, 401 P.3d at 379–80 (emphasis in original). And Section 29A.60.110 of the Revised Code of Washington "unambiguously requires that tabulated ballots be kept in sealed containers and can be opened by the canvassing board *only* in . . . specified situations": (1) as part of the canvass, (2) to conduct recounts, (3) to conduct a random check under RCW 29A.60.170, (4) to conduct an audit under RCW 29A.60.185, or (5) by order of the superior court in a contest or election dispute. *White I*, 401 P.3d at 379 (emphasis in original); *see also* Wash. Rev. Code § 29A.60.110(2). None of these situations apply here. WEICU lacks the

authority to conduct a recount, random check, or audit. And, as discussed above, Plaintiffs failed to file a timely election contest. Wash. Rev. Code § 29A.68.013; *see also Becker*, 890 P.2d at 1058. Thus, WEICU's arguments are without merit: Section 29A.60.110 of the Revised Code of Washington does not authorize unsealing, and Section 434-261-045 of the Washington Administrative Code—which provides procedures for handling damaged ballots—expressly states that "ballots must be sealed in secure storage at all times, except during duplication, inspection by the canvassing board, tabulation, or to conduct an audit under RCW 29A.60.185." All of the records WEICU requested fall under the "other statute" exemption.

WEICU makes several other arguments in support of its PRA claim, but those arguments have already been rejected by Washington courts or are clearly contrary to existing law. First, WEICU relies on its own interpretations of the Washington Constitution to argue that ballots should be disclosed, but Washington courts have already rejected those interpretations and have also held that Washington's election statutes provide the sole means of contesting an election. *See Becker*, 890 P.2d at 1058 (holding that the state constitution does not create an independent right of action, and the election statutes are the only means of contesting an election). Second, WEICU argues that the Washington Constitution "guarantees secrecy only in the preparation and deposit of ballots, and says nothing about secrecy following an election." Dkt. No. 1-2 at 12 (emphasis in original). But under the PRA, "tabulated ballots are exempt in their entirety from disclosure." *White I*, 401 P.3d at 380. Third, WEICU argues that the Washington Constitution "does not prohibit public access to unidentifiable ballots after an election." Dkt. No. 1-2 at 12. Courts have rejected this proposition, too: "RCW 29A.60.110 and WAC 434-261-045 provide categorical exemptions, not conditional ones," and "no amount of redaction will transform the ballots into some other type of record." *White I*, 401 P.3d at 380; *see also White v. Skagit Cnty.* (*White II*), 355 P.3d 1178, 1185 (Wash. Ct. App. 2015) ("The constitutional mandate of *absolute* secrecy could

not be adequately accomplished by just having government employees use their own discretion as to what is identifying on a ballot and what needs redaction." (emphasis in original)). Fourth, WEICU cites various Washington statutes and regulations permitting access to ballots or ballot images, Dkt. No. 1-2 at 13, but those statutes and regulations only permit access under a limited set of specified circumstances that do not exist here, as already explained. Finally, WEICU asserts that "[n]umerous courts outside of Washington State have ruled that ballots are public records and subject to inspection," *id.*, but Washington courts have found such cases unpersuasive because "they were decided within different statutory frameworks and under different factual circumstances," *White II*, 355 P.3d at 1184. And these courts' interpretation of the statutory framework at issue here weighs decisively against WEICU's claims. For these reasons, it is a "foreordained" conclusion that WEICU's PRA claim would be dismissed on remand, as the virtually identical claims in *Schumacher* and *Beaton* already have been.

In sum, remand of Plaintiffs' claims would be futile: dismissal of the claims is "foreordained" because they are clearly foreclosed by Washington law. *Polo*, 833 F.3d at 1198.

## IV. CONCLUSION

For the reasons stated above, the Court DENIES WEICU's motion to remand, Dkt. No. 26, and GRANTS Defendants' motions to dismiss Plaintiffs' claims, Dkt. Nos. 11, 30, without prejudice. *See Collier*, 889 F.3d at 897 (a suit dismissed for lack of jurisdiction cannot also be dismissed with prejudice). The Washington State Democratic Central Committee's Motion to Intervene, Dkt. No. 8, is DENIED as moot.

Dated this 30th day of September, 2022.

Lauren King
United States District Judge